UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL NO. 04-10752-GAO

DYMPNA MCMANUS,
Petitioner

v.

PETER MCMANUS,
Respondent

---

## MEMORANDUM IN SUPPORT OF MOTION FOR A GUARDIAN AD LITEM

---

### PRELIMINARY STATEMENT

This Hague Convention case involves parents who were married in the United States and

have four children born in the United States. The family resided together in Massachusetts for 10

years before moving to Ireland in May of 2001. The parties apparently dispute the intent,

duration, or rationale concerning the move. The respondent ("father") moved back to

Massachusetts in December 2001. There were visits back and forth by the father and the children

up to July 2003.

All the children came to the United States in early July 2003. They each disclosed abuse

by their mother of them in Ireland, leading to their father filing an emergency motion for

temporary custody in the Middlesex Probate and Family Court. There was a Family Service

Office investigation by that court which included the children's corroboration of the abuse and

1

maternal drinking. See, infra. The mother never appeared in the Probate Court. A divorce nisi entered in December 2003. The court sua sponte gave temporary custody to the father, without prejudice to the mother.

On or about April 13, 2004 the mother filed in this court a Petition for Return of Children to Petitioner Pursuant to the Hague Convention on the Civil Aspects of International Child Abduction. Contemporaneous with this Memorandum the father has filed a Motion for Appointment of a Guardian ad Litem.

By way of his motion, the father seeks an Order that would designate a guardian ad litem ("GAL"), to interview the children and conduct as necessary psychological assessment, evaluation, and investigation to:

1. Determine the wishes of the children regarding their living, or not, in Northern Ireland with their mother and investigate the reasons for such wishes for each child;

2. Assess, evaluate and opine upon each child with respect to his or her ability and maturity to express a desire to return to Northern Ireland with the mother or not;

3. Assess, evaluate, and opine upon whether a return to Northern Ireland with the mother would constitute a grave risk of exposing the children to psychological harm or otherwise place them in an intolerable situation.

### Argument

**A Guardian Ad Litem is Reasonably Necessary for a Determination of Issues Under Article 13(b) of the Hague Convention.**

Article 13(b) of the Hague Convention on the Civil Aspects of International Child

Abduction provides parents with the fundamental right to protect their children from "a grave risk of physical or psychological harm, or an otherwise intolerable situation," even if that means separating their child from the potentially dangerous parent by means of an international border.

The father invokes the grave risk exception. He does so because the children disclosed an intolerable living situation with their mother in Northern Ireland. He also asserts the children object to any return to Northern Ireland, which is another, separate, basis under Article 13(b) to deny a petition to return.[1]

"Under the Convention and its implementing legislation, the American courts have a duty to ensure that a child is not returned to a situation of grave risk or an intolerable situation." Danaipour v. McLarey, 286 F.3d 1, 26 (1st Cir. 2003); see E. Perez-Vera, *Explanatory Report*, ¶29 in 3 Hague Conference on Private Intl Law, Acts and Documents of the Fourteenth Session (1982) (translation of the Permanent Bureau) ("the interest of the child in not being removed from its place of habitual residence ... gives way before the primary interest of any person in not being exposed to physical or psychological danger or being placed in an intolerable situation"). In Hague Convention cases, "the terms of the Convention, as well as the Department of State's guidance, indicate that the protection of the child must remain paramount." Danaipour, 286 F.3d at 26.

Therefore, notwithstanding that the merits of the "underlying custody dispute" are not to be decided here, it is the obligation of this court to adjudicate the grave risk question under the Convention and the enabling legislation. Danaipour, supra. When confronted with a substantial claim that, if true, would justify application of the Article 13(b) exception, the court is to make the necessary predicate findings. Id. The instant motion is meant to assist in and advance that

---

[1] The father has other defenses and objections to the Petition which are not the subject of his instant Motion and Memorandum.

this Court grant his Motion for a Guardian ad Litem.

By his attorney,

fact-finding duty.

There is no doubt that the "substantial" threshold for the application of 13(b) has been well met. The Middlesex County Probate and Family Court ordered Probation Officer Marianne Sheehan to interview the children upon father's Emergency Motion for Temporary Custody in July of 2003, brought upon his concern for danger of harm to the children if they returned as scheduled to Northern Ireland. The children all described drunkenness by their mother; violent behavior, physical abuse (including some at the hands of the mother's brother Liam) and psychological abuse (all summarized by Daniel as "like living in hell over there"). A copy of the report (*Memorandum of Recommendations*) is attached hereto, as is a copy of the Affidavit of Peter J. McManus of July 21, 2003, filed in support of his Probate Court motion.

The proposed scope of the GAL appointment seeks to give each of the children a neutral forum to indicate his/her wishes regarding living in Northern Ireland. To the extent the mother may have concerns of peer/sibling pressure within the family group, or undue influence by others upon the children, the involvement of a clinical GAL with experience in such matters should address those concerns.

With regard to the younger children in particular [2] the opinion of a GAL as to degree of maturity may have probative value to the court's determination of this element. Finally, an opinion as to psychological harm, or not, upon any return to living with the mother is again properly within the sphere of relevant expert evidence.

## CONCLUSION

Based upon the foregoing, the respondent father Peter McManus respectfully requests

---

[2] The oldest children, who are twins, will be 14 in July. Father suggests, but defers his discussion to later, that their views are entitled to presumptive great weight.

4

JUL-23 03 08:43  FROM:PROB COU  CONCORD  6177292930          TO: 3749645                    PAGE:02

Commonwealth of Massachusetts
The Trial Court
Probate & Family Court Department

Middlesex Division                                          Docket No. 03D0324

Peter J. McManus
_____
Plaintiff
                                                            MEMORANDUM OF
vs.                                                         RECOMMENDATIONS

Dympna McManus
_____
Defendant

The undersigned hereby submits the following recommendations (or information) for the Court's consideration in the above stated matter: Judge McSweeny ordered Probation Officer Marianne Sheehan to interview four (4) minor children: Daniel DOB: 07.31.90, Sean DOB: 07.31.90, Stephanie DOB: 12.12.91 and Peter DOB: 05.19.93. The children were interviewed separately.

Daniel:
      Daniel stated to this probation officer that his Mother drinks 7 or 8 beers a night. The last time he saw his mother drunk was the end of June 2003. During my interview with Daniel, he stated that his mother yells and swears at him alot. He stated after his father left his mother takes it out on him because he is the oldest. His mother tells him he is the ring leader.

Marianne Sheehan
_____
Probation Officer

Date: July 23, 2003

①

## Memorandum (continued)

Daniel stated to this probation officer that he tries to avoid his mother as much as possible.

On or about two (2) years ago, Daniel stated that his mother threw a chair at his father.

Daniel stated that his mother is unable to handle them. She disciplines him by hitting him. Daniel stated his mother threatens him that she is going to get his Uncle Liam over the house to hit him.

During our conversation the probation officer asked Daniel if he missed alot of school. Daniel stated that his attendance records were bad. He reported that his mother was unable to get up in the morning because she had a hang over. Daniel stated that Sean and him go to school 3 to 5 miles from their home. He stated that his mother did not give them money to take the bus. Daniel admitted that sometimes Daniel and Sean would not get out of bed because they knew their mother would not get out of bed.

Daniel indicated that there are times he took advantage of his mother when she was drunk.

_Marianne DSheehan_
Probation Officer

Date: _July 23, 2003_

**Commonwealth of Massachusetts**
**The Trial Court**
**Probate & Family Court Department**

Middlesex Division                                      Docket No. 03D0324

Peter J. McManus
Plaintiff

MEMORANDUM OF
RECOMMENDATIONS

vs.

Dympna McManus
Defendant

The undersigned hereby submits the following recommendations (or information) for the Court's
consideration in the above stated matter:

Daniel stated to this probation officer that he would
have to sneak telephone calls to his father. He reported
that his mother put a block on the telephone, but
his brother Sean figured out how to bypass the block.
During my conversation, Daniel reported that he
purposely "acts out", so he could go live with his
father in the United States.
Daniel stated that his mother does not hit them as much
because he and Sean are taller than her.
Daniel stated he is scared to go back to N Ireland.
He believes that mother is going to act out and hit them.
Daniel believes that his father would be able to take care
of them. He wishes to live with his father in United States.

Marianne Sheehan
Probation Officer

Date: July 23, 2003

③

Memorandum (continued)

He reported that it is like living in hell over there.
Daniel has a better relationship with his father.

Peter:

Peter stated that his mother physical abused him.
During our conversation, Peter stated that his mother
disciplines him by making a fist and hitting him on
the head or stick her nails in his arm. He reported
that his mother swears at him.
He stated that his mother drinks 24 or less beers
a night.
Peter stated to this probation officer the following incidents:
• In describing one incident Peter stated that his
mother was drunk and ran into the room that
his father and he was sleeping in. His mother
started yelling that they needed to wake up
and go to a shelter. His mother started
swearing and hitting his father. Peter's opinion
is this is when the whole thing started with his
mother and father.
• Another incident Peter described to this probation

Marianne Sheehan
Probation Officer

Date: July 23, 2003

④

Commonwealth of Massachusetts
The Trial Court
Probate & Family Court Department

Middlesex Division                     Docket No. __0300324__

__Peter J. Mc Manus__
Plaintiff

MEMORANDUM OF
RECOMMENDATIONS

vs.

__Dympna Mc Manus__
Defendant

The undersigned hereby submits the following recommendations (or information) for the Court's consideration in the above stated matter: _____

officer that his brother Sean was stamping his feet coming down the stairs. His Uncle Liam thought it was him. His Uncle Liam started punching him on his leg and swearing at him. Peter stated that his mother told her brother to stop hitting him that he was not the one coming down the stairs stamping his feet.
• The most recent incident occurred was a couple of weeks ago before coming to visit with his father. Peter stated that his mother was drunk and threw a Metal chair at him. His legs were all bruised. Peter reported that his mother is nice when she is not drinking.

__Marianne Sheehan__
Probation Officer

Date: __July 23, 2003__

⑤

Memorandum (continued)

Peter expressed that he does not want to get hit anymore by his mother.

During our conversation, Peter stated about two (2) to five (5) months ago, his Uncle Liam knocked down their bathroom door and started hitting and calling his brother Daniel's names.

Peter stated to this probation officer that he never missed school.

During our conversation, Peter stated his mother would have a ~~cup~~ couple of cups of tea at night. He ~~described~~ indicated that his mother would sneak beer in the cup instead of tea. He smelled the cup that his mother was drinking out of.

Peter reported that his father only drinks on special occassions. His father may only drink a ½ of a can of beer.

Peter wishes to live with his father.

_Marianne Sheehan_
Probation Officer

Date: _July 23, 2003_

⑥

Commonwealth of Massachusetts
The Trial Court
Probate & Family Court Department

Middlesex Division                                    Docket No. 03D0324

Peter J. Mc Manus
_____
Plaintiff

MEMORANDUM OF
RECOMMENDATIONS

vs.

Dympna Mc Manus
_____
Defendant

The undersigned hereby submits the following recommendations (or information) for the Court's

consideration in the above stated matter: _____

Sean:
    Sean indicated to this probation officer that he
would be far better off living here then in
N. Ireland. His opinion was that his mother
is not a good role model. He believes that his
father would have more control over them than
their mother.
    Sean stated to this probation officer that his mother
drinks 14 beers a night. Sean reported
that his mother spends her money on beer
and cigarettes.
    Sean stated that he missed alot of school because his
mother did not give him money to take the bus.

Marianne Sheehan
_____
Probation Officer

Date: July 23, 2003

⑦

## Memorandum (continued)

During our conversation, he stated that he would go to school late around 10:00 AM or not attend school at all.

Sean stated to this probation officer the following incidents:

- he described that his mother was drunk and threw a metal chair at Peter.

Sean stated that in the past his mother has thrown plastic boxes and wooden pieces of wood.

- In May 2003, his mother came into his room and woke him up for no reason.

- About (3) three years ago when they were living in the United States his mother called the police on his father because she was drunk. During our conversation, Sean said that when his mother is drinking it is scary. Sean indicated that his mother has a short temper when she is not drinking. His mother gets upset over spilling milk.

Sean stated to this probation officer that sometimes he would take advantage of his mother.

_Marianne Sheehan_
Probation Officer

Date: _July 23, 2003_

Ⓢ

# Commonwealth of Massachusetts
## The Trial Court
### Probate & Family Court Department

**Middlesex Division**                                   Docket No. ___03D 0324___

Peter J. Mc Manus
_____
Plaintiff

                                                    MEMORANDUM OF
                              vs.                   RECOMMENDATIONS

Dymona Mc Manus
_____
Defendant

The undersigned hereby submits the following recommendations (or information) for the Court's

consideration in the above stated matter:

During our conversation, Sean stated that his mother
disciplined him by hitting him with her fist and
dig her nails into him. He reported that his
Uncle Liam hits Daniel and Peter.
Sean stated that his mother has telephone conversation
with her mother about his father.
He indicated to this probation officer, he had a
conversation with his mother and all his mother
stated to him is your aunt brain washing you.
During our conversation, Sean stated that his
mother told him that his father does not send over
enough money. Sean stated that he knew his
father sent his mother "800." a month. This

Marianne Dheelar
_____
Probation Officer

Date: ___July 23, 2003___

(9)

Memorandum (continued)

probation officer asked how he knew how much money his father sent his mother. He reported that sometimes Peter would open up the mail.

Sean stated that his mother spent the money on beer, food, rent and cigarettes.

Sean stated that he had to sneck telephone calls to his father. His mother did not want them to tell to their father.

Sean stated that all his mother's family members did not like them except Aunt Imelda. He indicated that they give them bad looks and yell at them.

Sean stated to this probation officer that his father told him that his mother denies the allegations that he filed with the court 07-22-03.

Sean reported that his father knew what was going on.

He believes it is in his best interest to reside with his father.

_Marianne DSheehan_
Probation Officer

Date: _July 23, 2003_



Commonwealth of Massachusetts
The Trial Court
Probate & Family Court Department

Middlesex Division

Docket No. 03D 0324

_Peter J. Mc Manus_
Plaintiff

vs.

_Dymona Mc Manus_
Defendant

MEMORANDUM OF
RECOMMENDATIONS

The undersigned hereby submits the following recommendations (or information) for the Court's
consideration in the above stated matter:

Stephanie:

    Stephanie stated to this probation officer
that her mother drinks 5-6 beers a night.
She reported that her mother losers her temper
and is unable to control them when she is
drinking.
Stephanie stated that her mother mentally and
physically abuses them.
Stephanie stated that her mother in her "drunken
behavior" threw a chair at her father when
he was visiting them in N. Ireland.
Stephanie stated approx. a month and half ago
her mother threw a metal chair at Sean, Peter and

_Marianne Sheehan_
Probation Officer

Date: _July 23, 2003_

(11)

## Memorandum (continued)

her.

During our conversation, Stephenie stated that her Uncle Liam punched, Kicked and would swear at Daniel and Peter. Her Uncle Liam never hit her, but did swear at her.

She feels safe with her father. If she returns to N. Ireland that her Mother is going to hug her and get drunk that night. Stephenie stated that her father does not drink or smoke.

Stephenie stated to this probation officer that her father told her that her Uncle Liam was in the I.R.A.

Stephenie reported that her father told them if their Uncle Liam abuses them, he would call the police.

Probation Officer Sheehan received a telephone call from Mrs. Manus from N. Ireland. She stated to Probation Officer Sheehan, she was going to get an Emergency Visa Wednesday 07-23-03 to fight for custody of the minor children.

Marianne Sheehan
**Probation Officer**

Date: July 23, 2003

(12)

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX,ss.                          THE TRIAL COURT
                                       DOCKET NO. 03D324DV1

```
_____
                              )
PETER J. MCMANUS,             )
          PLAINTIFF           )
                              )
V.                            )        AFFIDAVIT
                              )
DYMPNA D. MCMANUS,            )
     AKA DYMPNA DONNELLY      )
               DEFENDANT      )
_____)
```

I, Peter J. McManus, state the following is true to the best
of my knowledge, information and belief:


1.   My name is Peter J. McManus.

2.   I live at 58 Newcomb Road in Stoneham, Massachusetts.

3.   I have filed for divorce from my wife, the above-mentioned Dympna
     McManus, in this court.

4.   My wife currently resides in Northern Ireland.

5.   Prior to moving to Ireland in May of 2001, my family and I resided
     in Dorchester, MA for 10 years.

6.   I did not intend for my family to reside permanently in Northern
     Ireland.

7.   I moved back to Dorchester, Massachusetts in December of 2001.
     The children continued remained with their mother.

8.   My children are: Daniel, 12, Sean, 12, Stephanie, 11, and Peter,
     10.

9.   Their mother and I jointly parent our children.

10.  No orders have been made by this or any other court to date.

11.  I have made several visits to Ireland in the last year and a half.

12.  The most recent visits were in December of 2002, and May of 2003.

13.  During these visits, as well as through the childrens' frequent

telephone calls to me, I have become very concerned about their physical and mental well being.

14. I have become aware through observation and information from my children that their mother has developed a serious drinking problem.

15. It appears that she has been drinking heavily from early evening until the early hours of the morning, and drinking and passing out several nights a week.

16. She has been neglecting to get the children up in the morning for school; consequently they have missed a lot of school this past year.

17. Also concerning to me is her physical mistreatment of my children.

18. While I was aware of previous physical discipline, my children recently told me it was much worse.

19. When they misbehave, which my wife tells me is often since I have been gone, she hits them; not just slapping them, but with a closed fist.

20. During one visit to Ireland my father and I both witnessed her slap and punch my son Sean for coming home late.

21. For instance if they offer any resistance, which my son Daniel has done, she calls one of her brothers, who comes to the house and beats him.

22. When she is drinking, the physical abuse is even worse, and more unpredictable.

23. My children described a recent incident where their mother came into their room in the middle of the night and began screaming at them and hitting them with objects, including chairs.

24. She threatened to throw the television at them as well.

25. They were quite frightened by this and the many similar incidents that have been happening at home in recent months.

22

26. On July 2, 2003 the four children flew to Boston for a visit.

27. They are scheduled to fly back on July 23rd.

28. Since they arrived they have been telling my family, and me that they do not want to go back to their mother in Northern Ireland.

29. They tell me as reasons that they fear her abuse and drinking.

30. In addition to the other events, they are American citizens and identify themselves as Americans.

31. They tell my family and me that their life is here.

32. Their mother has also called me since they have been here and stated that if I am to keep any of the children, I must keep them all.

33. Over the past year, Dympna has called me often and told me to take the children.

34. Sometimes she wants just one or two of them gone, other times it is all the children.

35. She says this to me in front of the children.

36. Given everything I have learned and seen, I am scared to send any of the children back to their mother.

37. I am before this court today seeking an emergency temporary custody order for my four children.

38. I am working full-time and can support them financially.

39. With the help of my large family, I am able to care for and properly supervise my four children, as well as to keep them safe.

40. I strongly believe that it is in the best interests of my children to remain here in America with me, their father.

41. I simply want what is best for my children.

33

Signed under the penalties of perjury, this 21st day of
July, 2003.

Peter J. McManus
Peter J. McManus

44