UNITED STATES DISTRICT COURT
DISTRICT FOR MASSACHUSETTS

DYMPNA MCMANUS,             )
Petitioner                  )
                            )
                            )
V.                          )   NO. 04-10752-GAO
                            )
PETER MCMANUS,              )
Respondent                  )

REQUESTS FOR FINDINGS OF FACT AND RULINGS OF LAW OF
RESPONDENT PETER MCMANUS

Respondent requests the Court Find and Rule as Follows:

**BASIC FACTUAL BACKGROUND**

1. Dympna McManus, Petitioner (often hereinafter "mother") and Peter McManus, Respondent ("father") were married in Boston, MA on February 22, 1989, and also had a marriage ceremony at Kilskerry, Tyrone County, Northern Ireland.

2. Father and mother lived together in the United States, along with their children, until May 2001.

3. Mother is a citizen of Northern Ireland; father is a United States citizen.

4. Four children were born of their marriage: Daniel (D.O.B. 7/31/1990), Sean (same), Stephanie (12/12/91) and Peter (5/19/93).

1

5. The family moved to Northern Ireland in May 2001. The father returned to Massachusetts in December, 2001.

6. The father retained the children in the United States in July 2003 after a visit to this country agreed-to by both parents.

7. The father and mother were divorced in the Middlesex County Probate and Family Court.

8. A guardian ad litem ("GAL"), Sharon Gordetsky, Ph.D., was appointed in this court.

9. The GAL, the parties, and the four children testified at the trial of the case.

## APPLICABLE LAW

### A. General Principals of the Hague Convention

**1. Petitioner's Prima Fascia Burden:** This Petitioning mother seeks redress pursuant to the *Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89* (hereinafter "Hague Convention"). The United States is a signatory, as is Northern Ireland, to the treaty, which has been ratified and therefore has the status of law of the land. U.S. Const., art.VI. The *International Child Abduction Remedies Act* (1994), 42 U.S.C. 11601 et seq., is the implementing federal legislation.

The Hague Convention seeks to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures

to ensure their prompt return to the State of their habitual residence." Hague Convention, preamble. The Convention has as primary aims "to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court". Friedrich v. Friedrich, 78 F.3d 1060, 1063 (6th Cir. 1996) ("Friedrich II"). The Federal District Court has "the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim." Friedrich v. Friedrich, 983 F.2d 1396, 1400 (6th Cir. 1993) ("Friedrich I"); Whallon v. Lynn, 230 F.3d 450 (1st Cir. 2000), Blondin v. Dubois, 189 F.3d 240 (2nd Cir. 1999), Hague Convention, art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.")

The petitioner must first demonstrate a removal from the child's "habitual residence". Next, the alleged abduction claim is concerned with a determination of whether the respondent has "wrongfully removed or retained" the child; on this issue, the petitioner bears the burden of proof by a preponderance of the evidence. See 42 U.S.C. § 11603(e)(1)(A).

"Once a plaintiff establishes that removal was wrongful, the child must be returned unless the defendant can establish one of four defenses." Friedrich v. Friedrich, 78 F.3d 1060, 1067 (6th Cir. 1996) ("Friedrich II") ; Whallon v. Lynn, 230 F.3d 450, 460, see also, 42 U.S.C. § 11601(a)(4) ("Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies.").

Under the treaty and the ICARA, once the petitioner establishes wrongful retention, to prevent return the Respondent must establish by clear and convincing evidence an exception to return under articles 13b and 20. Hague Convention, arts. 13b, 20; 42 U.S.C. § 11603(e)(2)(A); Friedrich, 78 F. 3rd at 1067.

2. **Exceptions to Removal:** (a) Grave Risk of Physical or Psychological Harm. There are two relevant "exceptions" to a return of the children at issue in the instant case. First, that there is a "grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation". Hague Convention, Article 13(b). As noted above, the Respondent must establish by clear and convincing evidence this exception to return. 42 U.S.C. § 11603(e)(2)(A). The subsidiary facts must be proved by a preponderance of the evidence. Danaipour v. McLarey, 286 F.3d 1(2002). Grave risk is greater than that which would normally be expected upon taking a child from one parent and passing him to another. Walsh v.Walsh, 221 F2d, 204 (1str Cir. 2000). Indeed, it must be more than a serious risk. Danaipour v. McLarey, supra.

(b) The Court may also refuse to Order the return of a child "if it finds the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views. Hague Convention, Article 13(b).

4

## B. Application of the Law to the Facts

1. **Habitual residence:** Because, as set out below, the exceptions of grave risk and the children's objection to return are so clearly met that this petition must be denied, the threshold question of habitual residence is not as crucial in the court's determination as it might otherwise be. I find, on a close question, that the children were not habitually resident in Northern Ireland. If the Court found they were habitual resident of Northern Ireland, the outcome denying the Petition would not change.

The Convention does not define "habitual residence." The general approach of courts that have considered the matter determine a child's habitual residence on the basis of the peculiar facts and circumstances of the case at hand. See, e.g. Zuker v. Andrews, 2 F.Supp.2d 134, 137-138 (D. Mass. 1998).

A consensus has emerged on some general principles. "Habitual residence" is not a technical term, like "domicile," Friedrich v. Friedrich, 983 F.2d 1396, 1401  (6" Cir. 1993), and it should be understood as the child's "ordinary residence" at the relevant time. Rydder v. Rydder, 49 F.3d 369, 373 (8th Cir. 1995). Moreover, in determining a child's habitual residence, "the court must focus on the child, not the parents, and examine past experience, not future intentions." Friedrich 983 F.2d at 1401. Habitual residence must encompass some sort of "settled purpose". Feder v. Evans Feder, 63 F.3d 217, 222-223 (3rd. Cir. 1995). Whether a child's residence has become thus "settled" depends on "an analysis of the child's circumstances in that place and the parents' present, shared intentions regarding their child's presence there."

Feder, 63 F.3d at 224. As Mozes v. Mozes, 239 F.3d 1067 (9th Cir. 2001) makes clear, however, a component of settled purposes must be the clear abandonment of the prior residence.

Applying these considerations to this case, it is determined from the record before the Court that the children's habitual residence was in the United States at the time of the alleged wrongful retention. To be sure, there are a number of factors which support a contrary determination. At the time the family moved to Northern Ireland, they sold their house in Massachusetts. The children were enrolled in Northern Ireland schools; they participated in sports and other activities. They had some relatives they associated with to some degree in Northern Ireland. They were there for two years. [But see, Tsarbopulous v. Tsarbopoulos, 176 F. Supp. 2d 1045 (E.D. Wash. 2001), 27 months insufficient.] As Mozes, supra., teaches, in the absence of settled parental intent, courts should be slow to infer from such day to day contacts that an earlier habitual residence has been abandoned.

The family rented – not bought - a house in Northern Ireland. The father made no attempts to work or become a citizen. He clearly viewed the move as temporary[1]. The children had been born in the United States and lived here uninterruptedly until going to Northern Ireland. "The court must look back in time, not forward." Friedrich, 983 F.2d at 1401. Focusing on the children, who are of sufficient age and maturity to have their desires considered (see below), they clearly identify themselves as American. It is in fact the attitude of

---

[1] Given the evidence of the parent's non-communication, it is not unlikely they had no shared intentions regarding the move.

6

the children themselves, as testified to, which tilts the balance to the United States as their habitual residence. There is no evidence that they saw themselves as having abandoned the United States as their home.

2. **The Children's Objection to Return:** I find for each child a definite and clear objection to being returned to Northern Ireland and that each has attained an age and degree of maturity at which it is appropriate to take account of its views. Hague Convention, Article 13(b).

It is appropriate to discuss the children as a group, as well individually, given the united, cohesive, and consistent presentation they have made since returning to the United Stated in the summer of 2003. Sharon Gordetsky, Ph.D., was appointed as guardian ad litem to address the wishes of each child regarding return to Northern Ireland; to evaluate the ability and maturity of each child to formulate and express their preference; and to provide an opinion whether return would or would not constitute a grave risk of psychological harm and/or expose them to an intolerable situation.

I find Dr. Gordetsky to be a seasoned[2] and well-qualified expert as set out in her C.V. and testimony, (P.8-11) I credit her report and testimony. She found for each child that they were of sufficient cognitive and emotional maturity to understand the implications of their expressions of desire to live with the father in the United States. The ability of each child to assess the relevant factors on both sides of the question of return, or not, was important to the GAL, and I find and credit that this ability to see the issues as not "black or white" (Testimony,

---

[2] A licensed psychologist for since 1977; past president of the Massachusetts Psychological; chief psychologist at various centers, all as testified to and in her CV.

7

Gordetsky at p.22-29, 31-32, 34-35) as a part of the evidence of sufficient emotional maturity such that their objections to return should be taken into account. The GAL opined, and I credit her opinion, that the decisions of the children were not angry or impulsive. (p.22)

The Court interviewed the children individually. Each child was calm and well reasoned in expressing his or her preference not to return to Ireland. Each clearly loved the mother, but articulated issues of safety (detailed, infra) should they go back. Each identified him/herself as "American", with only Daniel expressing any portion of an Irish identity. While Peter may be only eleven years old, in testimony before me he was measured, astute, rational, and in control of his emotions. In many respects he was, although the youngest, the most articulate and insightful child of the four.

The professional opinion and my interviews established, and I find, their was no indication of undue parental influence, "brain-washing", or sibling pressure upon the children in the formulation of their objection to return or their expression of that objection.

I find that the objections of the children should be considered. I have considered them and find that the petition for their return should be denied given those objections. I find that return over objections would be harmful to each child.

3. **Grave Risk of Physical or Psychological Harm:** A child may not be returned under the Convention if there as a "grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation". This exception is to be narrowly construed.

8

Based upon the professional opinion of the GAL, which I find persuasive and credible and do credit; the children's testimony before me; their consistent reports to the GAL, the Probation Officer at the Middlesex Probate and Family Court, and the Department of Social Services investigator, I find that such a grave risk exists for each child. The home in Ireland was, as described even by mother, chaotic. I find the mother threw chairs and bottles at the children. I find the mother brought relatives into the home to physically discipline the children, during which doors were knocked in and children hit. I find the children obtained and secreted knives as a result of these physical interventions, and were intending to use the weapons in self-defense. I find the children were locked downstairs as a form of discipline. I find the children ran into the fields by the house for safety from their mother. I find the children would climb trees to look inside the house to ascertain whether it was safe to go inside. A preponderance of the evidence, most particularly the consistent and credible account of the children, establishes the subsidiary finding the mother abused alcohol and her behaviors at those times constituted a grave risk to the children.

I credit the opinion of the GAL and find that return to the situations described by the children, and which have found as cited above, frequently put them at serious risk for current and future psychological harm. (Report, page 43). I credit the opinion of the GAL and find that from a child mental health perspective the situation in Ireland to be an "intolerable situation". (Id.). I credit her opinion in response to a question that the risk of psychological harm would

be "grave" upon return.[3] I find, as supported by the professional opinion of the GAL, that there is a grave risk of psychological harm, including depression, anger, anxiety, shame, and betrayal should the children be returned

I find the mother while in the United States during these proceedings was unable to control her behavior concerning the children. She fought with them. She was unable to refrain from derogating the father. I find that her inability to exercise control over the summer is probative of her inability, which I find, to exercise control should the children be with her. I find her inability to utilize appropriate resources in the past for assistance with her children is probative as to her inability to reasonable utilize services should the children be with her. I find upon all the evidence, including the testimony before me by the mother, that there are no set of circumstances reasonably to be obtained which would ameliorate the risk of harm to the children should they be returned. The mother's testimony in court that she continues, even at this juncture, to hold the father responsible for her problems with the children is compelling evidence of the futility of any considered interventions to lessen the grave risk in this case.

**ORDER**

1. The children were not habitually resident in Northern Ireland, and the Petition is Dismissed.
2. Even if the children were habitually resident in Northern Ireland, I find by clear and convincing evidence (a) that the children are of sufficient

---

[3] Expert need not couch their opinion in formulaic terms (see testimony at p. 74, l. 6-12) to fit a particular statute.

age and maturity that their objection to return should be honored, and (b) a grave risk exists that his or her return would expose each child to physical or psychological harm and also otherwise place the child in an intolerable situation. Accordingly, the Petition for return is Denied.

Dated: _____          _____

## CERTIFICATE OF SERVICE

I certify I served a copy of the foregoing pleading upon counsel of record: Jennifer Cervenka, Holland & Knight, LLP, suite 1800, One Financial Plaza, Providence, RI 02903 by mailing same, first class postage prepaid, on the date set out below.

November 12, 2004

/s/ Harold Robertson
Harold Robertson