UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DYMPNA D. MCMANUS,<br><br>      Petitioner<br><br>v.<br><br>PETER J. MCMANUS<br><br>      Respondent. | CIVIL ACTION<br>No. 04-10752 GAO |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW OF DYMPNA D. MCMANUS[1]

### PROPOSED FINDINGS OF FACT

1. In or about May of 2001, the McManus family sold their house and cars in the United States, removed their four children from schools in the United States, collected their children's medical, school, and baptismal records, and shipped all of their furniture and personal belongings to Northern Ireland.

2. In or about May of 2001, the McManus family permanently relocated from the United States to Northern Ireland.

3. The McManus family intended to move to Northern Ireland so that their children could attend superior and less expensive schools and Petitioner Dympna D. McManus ("Ms. McManus") could be closer to her ailing mother and benefit from the support network provided by her large family.

4. Respondent Peter J. McManus ("Respondent") did not have a job when the McManus family left the United States for Northern Ireland in or about May of 2001.

---

[1] The trial record citations in support of the proposed findings of fact are set forth in the Post-Trial Brief of Dympna D. McManus.

1

5. Upon arrival in Northern Ireland in or about May of 2001, the McManus family moved into a new home for which they purchased furniture and other items, purchased a car and car insurance, enrolled their children in school, opened a checking account, re-established ties with the extended maternal family, and acquired a family pet.

6. In Northern Ireland, Respondent obtained a health insurance card from the Government of the United Kingdom.

7. From 2001 through 2003, Daniel, Sean, Stephanie, and Peter McManus (the "McManus Children") attended school, played sports, were active in the Catholic Church, and established close friends in Northern Ireland.

8. In or about December of 2001, Respondent left Northern Ireland and returned to the United States to live alone.

9. After he returned to live in the United States, Respondent returned to Northern Ireland only to visit the McManus Children for Christmas and their Confirmations.

10. After he returned to live in the United States, Respondent consented to the McManus Children continuing to live in Northern Ireland.

11. While in Northern Ireland, the McManus Children continually resided with and were cared for by Ms. McManus.

12. Respondent depended on the income support provided by the Government of the United Kingdom as a means for providing financially for the McManus Children.

13. On July 2, 2003, the McManus Children went on a three week vacation to visit Respondent in the United States.

14. The vacation was planned and the McManus Children were to return to Northern Ireland on July 24, 2003.

15. On July 21, 2003, Respondent left a telephone message for Ms. McManus telling her not to go to the airport because he would be keeping the McManus Children in the United States.

16. On July 23, 2003, Respondent left a telephone message for Ms. McManus reminding her not to go to the airport because the McManus Children would be living with him in the United States.

17. Prior to July 21, 2003, Respondent did not seek the permission of Ms. McManus to retain the McManus Children in the United States.

18. Ms. McManus did not indicate to the McManus Children or Respondent at any time that the McManus Children could live in the United States.

19. Pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Ms. McManus filed an application with the Central Authority of Northern Ireland on or about October 3, 2003. In her application, Ms. McManus sought the return of the McManus Children to her in Northern Ireland.

20. Ms. McManus contested the entry of the divorce judgment obtained by Respondent in Massachusetts Family and Probate Court and indicated that the order awarding temporary custody to Respondent was obtained on erroneous facts.

21. In Northern Ireland, the McManus Children had disciplinary problems that included refusing to attend school.

22. In Northern Ireland, Daniel was physically disciplined by a third-party on only one occasion.

23. In Northern Ireland, Sean may have been physically disciplined by a third-party.

24. If Sean was physically disciplined by a third-party, it was on one occasion only.

25. Neither Stephanie nor Peter were ever physically disciplined by a third-party when they lived in Northern Ireland.

26. While Ms. McManus may have physically disciplined the McManus boys, she did not physically abuse them.

27. Ms. McManus never physically disciplined Stephanie McManus.

28. Ms. McManus was physically abused by Respondent.

29. Ms. McManus and Respondent did not communicate very well.

30. Ms. McManus and Respondent slept in different beds and did not have sexual relations with each other for at least the past 5 years.

31. There has been severe marital discord between Ms. McManus and Respondent since the birth of Peter McManus in 1993.

32. Ms. McManus tested negative for alcohol during 3 random tests in the summer of 2004.

33. Evidence is inconclusive as to whether Ms. McManus has ever been an alcoholic or had a drinking problem.

34. The emotional and behavioral problems experienced by the McManus Children are multi-determined.

35. Respondent has neglected the McManus Children, which has contributed to their emotional and behavioral problems.

36. The marital discord between Ms. McManus and Respondent has contributed to the McManus Children's emotional and behavioral problems.

37. Since being retained in the United States, the McManus Children have had disciplinary problems that include refusing to attend school.

38. Daniel and Stephanie were both subject to CHINS ("Child in Need of Services") actions for failure and/or refusal to attend school in the United States.

39. As of the date of the trial, Sean has refused to attend school for the 2004-2005 school year.

40. The McManus Children have only expressed a preference to stay in the United States.

41. Daniel wanted to return to live in Northern Ireland in January and February of 2004.

42. Sean wanted to return to live in Northern Ireland in the summer of 2004.

43. The McManus Children identify positively with certain aspects of Northern Ireland, including their schools, sports, friends, and cat.

44. The McManus Children were born during the marriage of Ms. McManus and Respondent.

45. The McManus Children are 14 (Daniel and Sean), 12 (Stephanie), and 11 (Peter) years of age.

46. Ms. McManus's Petition for the return of the McManus Children to Northern Ireland was filed on or about April 14, 2004, within one year of the Respondent's retention of the McManus Children in the United States.

47. If the McManus Children are returned to Northern Ireland, Ms. McManus is willing to perform the following undertakings: 1) stop drinking alcohol and undergo further alcohol testing; 2) undergo family counseling at facilities in Northern Ireland such as Women's Aid or the Aisling Center; and 3) obtain third-party intervention, if needed, from professionals rather than family or neighbors.

## PROPOSED CONCLUSIONS OF LAW

1. The Hague Convention is in effect in both Northern Ireland and the United States.

2. The Hague Convention applies to the McManus Children.

3. The McManus Children were physically present in Northern Ireland for an amount of time sufficient to become acclimatized to the country.

4. The relocation of the McManus family to Northern Ireland had a settled purpose.

5. The Respondent and Ms. McManus had a shared present intention to live with their children in Northern Ireland for an indefinite period of time.

6. The McManus Children were habitually residing in Northern Ireland as of July 21 2003, the date the McManus Children were retained by the Respondent in Northern Ireland.

7. The law of Northern Ireland governs Ms. McManus's custody rights in the McManus Children.

8. Under the law of Northern Ireland, Ms. McManus has custody of the McManus Children by operation of law.

9. Ms. McManus was exercising her custody rights of the McManus Children immediately preceding Respondent's retention of the McManus Children in the United States.

10. Respondent wrongfully retained the McManus Children in the United States on July 21, 2003 in breach of Ms. McManus's custody rights.

11. Ms. McManus did not consent or acquiesce to the retention of the McManus Children in the United States at any time.

12. The McManus Children will not suffer a grave risk of physical or psychological harm if they are returned to Ms. McManus in Northern Ireland.

13. The psychological harm that may potentially befall the McManus Children if they are returned to Northern Ireland is attributed to adjustment problems and is not sufficiently serious within the meaning of the Hague Convention to deny an order of return.

14. Even if the McManus Children will suffer a risk of physical or psychological harm by returning to Northern Ireland, return of the McManus Children to Northern Ireland on the condition that Ms. McManus perform certain undertakings is appropriate.

15. The McManus Children do not object to returning to Northern Ireland.

16. The McManus Children are not of a sufficient age and maturity such that their views should be taken into account in determining whether return to Northern Ireland is appropriate in this case.

17. If the Court orders the return of the McManus Children to Northern Ireland, Ms. McManus is entitled to her reasonable costs.

DYMPNA D. MCMANUS
By her Attorneys,

HOLLAND & KNIGHT, LLP

David J. Correira, Esq. (BBO #554520)
Jennifer Cervenka, Esq.(BBO #645724)
HOLLAND & KNIGHT LLP
One Financial Plaza, Ste. 1800
Providence, RI 02903
Tel: 401-751-8500
Fax: 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

## CERTIFICATION

I hereby certify that on the 12th day of November, 2004, I sent a copy of the within document by first class mail to:

Harold Robertson, Esq.
Harmon & Robertson, P.C.
85 Merrimac St. 4th Floor
Boston, MA 02114

*Paula K Jordan*

# 2394593_v1